So we will hear argument next in 23-2135, Carbon Activated Tianjin against the United States. Ms. Hartman. Good morning, Your Honors, and may it please the Court. This case presents a simple issue, whether the Department of Commerce's selection of the surrogate value for carbonized materials in the 12th Administrative Review of the Anti-Dumping Order on Certain Activated Carbon from China is supported by substantial evidence and otherwise in accordance with law. The statute directs commerce to value factors of production based on the best available information from one or more market economy countries. Carbonized material is one of the primary factors used to produce activated carbon. The AR-12 record shows that the two Chinese respondents sold subject merchandise that was produced using coal-based activated carbon or carbonized materials. Activated carbon can also be made from wood-based charcoal or coconut shell charcoal. Here commerce had a choice between two potential surrogate values for Malaysia for carbonized materials. One was a larger subheading that covers wood charcoal as well as coconut shell charcoal, and the second was a more narrow subheading. That's the basket provision. That's correct. It's actually not a basket category, it's a higher level subheading, so it's a six-digit subheading. But it has two items in it. That's correct. It covers both coconut shell and other wood. And then the more narrow subheading under that, 4402.91, which only covers coconut shell charcoal. Commerce chose the narrower category. In the lower court's first opinion, the court remanded, stating absent evidence the respondents had used coconut shell charcoal, commerce's selection of the narrower subheading over the broader heading was unsupported by substantial evidence and lacked reasoned explanation. On remand, commerce initially reversed itself and selected the broader heading. However, commerce reverted again in the final remand determination, and in doing so they made three findings. First, commerce found, and I'm quoting here from ABPX 4800, that there was a long demonstrable history in this proceeding of using coconut shell cardamom in the production of subject merchandise. Unlike wood cardamom, which has never been used to produce subject merchandise. Can I just stop you, and I see, is that sentence about which there's a dispute about basically how to read it, whether it means what this respondent or others actually used, or whether it's, though not quite worded this way, what the agency has used in previous iterations of this proceeding? We understand that as our friend's interpretation of what commerce actually meant, we were just pointing out that that is what commerce actually said, and that the court quoted that finding, that erroneous finding, in its decision. And so we submit that that is clear error, because the court repeated the erroneous finding by commerce that there was use of coconut shell charcoal, which there has not been. And the second reason commerce gave is relevant to the other argument from our friends, is that it was commerce's practice of selecting. So commerce used coconut shell in prior cases, in prior reviews. And we submit that there is not, in fact, a consistent prior practice of selecting coconut shell. In prior reviews, there was one Chinese company, a company called Jacobi Carbons, that had advocated for the use of coconut shell charcoal, and in AR-5, they even submitted evidence, it was an expert report, showing that their activated carbon could not be produced from wood-based charcoal. And so then in a series of prior reviews, which were the cases that commerce cited in support of its finding, commerce had consistently selected coconut shell, because Jacobi Carbons had presented this evidence. Jacobi Carbons was not a respondent in AR-12, there was no such evidence about use or comparability of coconut shell versus the coal-based carbonized materials that the AR-12 respondents used, and therefore, there is no reason, it was not reasonable for commerce to rely on that prior practice. And we submit that this Court's decision in Jacobi Carbons, which was an appeal from AR-4, is directly on point there. Because the cases that commerce is citing did not involve a decision between this larger, this broader subheading, which covers wood and coconut, versus the narrower subheading. And so commerce's findings, their analysis based on other choices, which included a comparison between coconut shell or coaxial coal, which is a completely different product, does not speak to the reasonableness of the choice they made here. Just curious, you're making a lot of arguments why the coconut shell shouldn't really have been considered, but you in the end want both coconut shell and wood to be considered. And I'm just trying to figure out why aren't you then arguing, well, it should just be wood alone, instead of wood and coconut shell, because obviously your bottom line is premised on coconut shell actually being worthwhile as a consideration. And Your Honor, I think the arguments that were presented before commerce and on appeal were not that coconut shell is completely dissimilar or would never be an appropriate surrogate. It was that this record lacked evidence about the comparability of the two. Whose burden is it to develop the record? It is the parties, both respondents and the petitioners, and the potential surrogate values that were submitted. I mean, in circumstances like this, when we have a non-market economy and we're trying to figure out these surrogate values, isn't it your party's burden to try to develop the  I think this question of comparability didn't really get developed until even when the lower court remanded to commerce, saying there was no evidence on the record. Commerce did not reopen the record on remand, and so then initially in the draft remand recognized there was a lack of record evidence and found that based on, because of the lack of record evidence, it was reasonable to use the broader heading, but then reversed itself. So that's why we're stuck with this position of having to address commerce's findings in the final remand where there is this lack of record evidence, which the lower court recognized in initially remanding back to the agency. So we addressed, we went through the facts that are relevant and distinguished commerce's prior cases on pages 16 to 22 of our blue brief. I'm happy to get into them if the court has any questions. Otherwise, I'd just note that the third reason that commerce gave for selecting coconut shell was based on what it determined were differences in the production processes, and specifically they cited a footnote in one of the ITC's reports from the original investigation. We submit that commerce's inference from this footnote is unfounded. What the footnote actually says is that chemically activated carbon is generally made using wood. It does not say that wood-based charcoal cannot be used to make steam or heat-activated carbon, which is the subject merchandise. In fact, the scope explicitly covers activated carbon made using wood-based charcoal. Commerce has selected wood-based charcoal at a surrogate value in prior reviews. Even Petitioner has advocated for using wood-based charcoal at various points. Simply relying on that footnote in the ITC report is not substantial evidence. Commerce also disregarded other aspects of the ITC reports that distinguished coconut shell from charcoal-based activated carbon. If there are no further questions, I will pause and reserve my time. Reserve your time. Thank you. Mr. Crowley. Good afternoon, Your Honors. May it please the Court. Commerce's determination should be upheld in this case because it was a reasonable determination, particularly given the sparse record and the broad discretion that Commerce enjoys in the area of selecting surrogate values. I want to address right up front this issue of- Mr. Crowley, you're representing the government, right? Yes. Okay, just one second. I want to clarify this issue about what Commerce said in its remand determination. Because by my count, I count at least three separate instances in the remand determination at page 4800, 4802, and 4809. And then two more instances in the trial court decision at page 54 of the record, note 6, and 57 of the record, which is in turn referring back to the Commerce determination at page 4802. I know I just threw a lot of pages out at you. What are those pages in the trial? Sure, sure. I've got 4800, 4802, and 4809. Right. And what are the ones- 54, note 6, and 57, which is referring back to 48- it's citing 4802, page 7 of the Commerce remand determination. 54, note 6, and- 57. 57. Which is in turn citing remand determination 7, which is 4802. So what you'll find in all of these pages is Commerce repeatedly referring to not just that people in the past have used coconut shell as a surrogate value, but the fact that Commerce has repeatedly, and I think to clarify, by my count it's in every review since AR4 of this proceeding, Commerce has used coconut shell carbon to value the coal-based- sometimes it's both coconut and coal, sometimes it's coconut, sometimes it's just coal, just like this case. Commerce in all of those reviews since AR4, the last seven, has relied on coconut-based products as a surrogate value for the carbon- But coconut only, that's- What's that? But coconut only, that's Administrative Review 3, 5, and 9, right? No. No. I think the best place one could find a rundown of this issue is actually in the intervener's brief, page 29, footnote 4. For all of these reviews, Commerce has used some form of coconut-based carbonized material. It has never used wood, and no party has ever said that they've used- even though my colleague is right, that in the scope- This time around it's coconut only, right? This time around it's coconut only, and in all of those reviews I just mentioned, they also, I believe, use coconut only. There was one review- In fact, most of the time there was an argument from the 8th review to the 10th review. There was an argument because the coconut HTS category included some French imports that everyone was upset about because they thought that they included wood-based carbon material, and there were arguments about whether those should be excluded, and there were a couple reviews where, because they said, really, wood shouldn't be in here, Commerce excluded the wood, and then in the 10th review it refused to exclude the French imports, even though they may have contained wood. They said there wasn't enough evidence, and there was three remands, and ultimately they decided to exclude it. But the ethos has been- And this is what Commerce said in this remand determination in this case, most specifically at note 26, referring back to the 3rd, 5th, and 9th reviews, which are the ones that provided as examples. Commerce said, we have found- It's not merely that we've used, but we have found in the past that coconut-based carbon material is a good surrogate value for the coal-based carbon material that the respondents use. Also, despite plaintiff's characterization, this is not the only case where the choice has been between the HCS category that Commerce used in this case, and either a broader category, or in fact, the same basket category. This court reviewed the 11th review proceeding of the carbon order, and that was reflected in another decision of this court, which is cited at page 5- footnote 5 of the intervener's brief. It's another carbon-activated tangent decision, I believe. And in that case, the issue that was actually before the court had to do with the surrogate country selection, but the stuff of the surrogate country selection, why they were deciding between the surrogate countries, was all based on who had the better carbon-based data. And so you won't see in the headings, carbon-based surrogate country selection, but when you read through, you'll see that what the parties were saying was that Commerce had to choose either between Malaysia, which had the same surrogate value they used in this case with the 8 digits or 10 digits, or the same 6-digit basket category. They wanted Romania in that case, and said that it had the 6-digit basket category. And the whole stuff of that decision was that Commerce said, no, we like Malaysia in particular, because it has the most specific surrogate value. We don't want to use the 6-digit category. And in that case, just at a 50-foot level, there have been some cases where the respondents just used coal. There have been some cases where the respondents used both coal and they said they used coconut. In the 11th review case, for example, this respondent said, we just use coal, we don't use coconut. And the other respondent said they did use coconut. And it's not in this court's decision, but if one were to look at the district court decision just under that, there was some argument about that. And the district court said, well, just because you only use coal. To step back from all of that, this court's precedent doesn't say that Commerce has to treat identical situations similarly. The jurisprudence going back all the way to SKF is that Commerce acts unreasonably when it treats similar situations differently. And so we would argue that there have been a lot of similar situations. The 5th review, again, it was this category versus not a 6-digit but a 4-digit basket category. Chopped off two more digits and Commerce went with a more specific. It's always gone for coconut since the 4th review. The 4th review was the last time, eight years ago, that they used any kind of wood. And that was a specific set of circumstances where Commerce decided that was the best thing on the record. What do you think is the real evidentiary value of that ITC report statement that chemically activated carbon is typically used for wood? Why does that raise the inference that wood is, therefore, not relevant to steam-activated carbon? That seems to be where Commerce was going. And I'm just not sure that there's a bridge between those two things.  Well, the ITC report said two things. First of all, page 3267, it said that the nature of the product depends both on the makeup of the material and the activation process. At 3268, it then goes on to say that chemically activated carbon is usually made of wood. And so I think Commerce took a reasonable position. They said that makes it more likely that we should be going with coconut rather than wood. They didn't say it's absolutely impossible for wood to be steam-activated, but that information makes it more likely. The appellants say that Commerce mischaracterizes. So Commerce didn't take that far. I think of it colloquially as like a Bayesian statistics thing. If you pull one red pebble out, it makes it more likely that the next one is going to be red. But I think part of the import there is that was evidence that was on the record that made it more likely that Commerce should use coconut. And the appellants argue that Commerce is kind of mischaracterizing the record there, that they're taking it too far. But look, we're here. I mean, I think we know that Commerce didn't get it wrong here because we have the next case that we're going to argue in 10 minutes where there's even more direct evidence that says that steam is coal and coconut and wood is chemical. Commerce didn't make a comparative finding in this case. In that case, Commerce did make a comparative finding and actually said coconut and coal are more close than wood and coal. Commerce didn't make that finding in this case, but at note 26 in the remand results, Commerce did go back to the finding that it's made on a number of occasions, which is that there are a lot of similarities between coconut and coal and that coconut is a good surrogate value for coal. So even though it didn't make a comparative finding, it certainly made the finding that coconut is a good surrogate value. That's why the history matches up with the evidence on the record. And in a case where it was a close call and Commerce had to kind of weigh two different factors on a pretty sparse record, that's how Commerce ended up where it did. And this court's job is not to decide what the best available information was. It's to determine whether Commerce's estimation of what the best available information was was reasonable. And given everything here, I think it's hard to say, even if you could make an argument that Commerce should have relied on the basket category and used wood and coconut instead, that it was not unreasonable. I do think if Commerce had done that, we could be here on the same case. And while maybe I would be in the same position of arguing that Commerce is reasonable, I think it would be a stronger case if you had the other side up here appealing that it wasn't reasonable for Commerce to rely on both wood and coconut. Because other than the fact, the only fact that they say is we definitely didn't use either one of those. And they're relying on that kind of absence of evidence to say that Commerce should do both. How does one get carbon out of a coconut shell? Well, I think... You have an innocent coconut sitting there. I know. And then what do you have to do to it? I was reading this in the record of the next case. I think you're treating it with acid and pressure and steam. I mean, I think it's all carbonized material, you know, the shells of nuts and wood. Anyway, I probably shouldn't speculate. But to go back to the beginning of my remarks, because I probably should have articulated this, the sentence that they point to on page 4800 where Commerce allegedly misspoke, the sentence right before that, the first sentence of the paragraph, Commerce says we have a long history of using coconut as the surrogate value in this proceeding. So that's clearly the ethos of what they're talking about. When they come back to it on 4802, they said it's been our practice. We have no reason to derogate from our practice of using it. And then on 4809, they say, as we said above, based on our history of using coconut in this proceeding, as well as the evidence indicating that wood is more likely to be associated with chemical, which, again, I think we know they weren't wrong about that. You know, that's why we're landing where we're landing. It was a close case, but ultimately Commerce is reasonable, and that's why they should be upheld. Thank you. Good afternoon. May it please the Court. There are two principles that I think need to be balanced here, both by the Court and by Commerce, when looking at this record. On the one hand, you have the fact that every administrative review stands on its own, and every record has to support the Department's findings. And everyone agrees that that principle is in play here, I think. On the other hand, you have the fact that the trial court recognized at appendix page 57 of its opinion that Commerce administers these trade orders over time. We're in the 12th administrative review here. And over those 12 years, Commerce has built a certain knowledge about activated carbon as a product, the production process to make it, and the inputs that go into it. And I think what the respondent in this case is largely asking is for Commerce and the Court to disregard the long history here. And the history is really two components. Both that coconut shell... As a matter of either regulation or recognized, you know, court-approved practice or something, does the record in any given administrative review automatically include the prior Commerce rulings in the earlier administrative reviews? Certainly to the extent that those are published findings. So, for example, a Federal Register Notice and the memos that accompany that Federal Register Notice that underlie the Department's decisions, absolutely. I mean, Commerce is building practice over time. Both as a general matter and within the context of this. We also have other case law that Commerce also endorses that says something like each administrative review is considered on its own facts and record. Yes, absolutely, Your Honor. In fact, I think the government's going to rely on that principle in the next appeal. Right. In one part. Yes, I agree, Your Honor. So I think what needs to happen here and what the lower court did and what Commerce was doing was trying to balance those two principles. You have a certain practice that builds up over time with respect to an individual case and you have the fact that every record needs to stand on its own. Here, and we cited this in our brief at page 29, note 4, we cite that for at least the last four reviews, 8, 9, 10, 11, leading up to this 12th review, the respondents argued in favor of using coconut shell charcoal as a surrogate value both for coal-based consumption and coconut shell consumption, and Commerce adopted that argument and it has used coconut shell charcoal as the surrogate value for all of these recent cases. Not always the import value necessarily, but there's another coconut-based publication that has been put on the record in the past that Commerce has used. So in light of that history coming into this review, isn't it even more incumbent on the party that is seeking a change from that practice, and Judge Chen was inquiring about this point earlier, isn't it that party's burden to build the record to show that a departure is warranted? Commerce has this understanding and it's published in its findings that coconut shell is the best source to value both coconut shell consumption itself but also coal-based materials. So to the extent that Commerce should have done something quite different in this review compared to what it's done in the past, the burden was on the respondent to put something on the record to support that argument. And here it did not. There's the two ITC reports that have been in existence for quite some time that Commerce reasonably relied on to reach its findings, and of course we'll be talking shortly about the evidence in the next review. But all parties here, I think, including the trial court, understood that the record was thin and that Commerce chose the best available information based on what it did have on the record and based on the long history in this case. Thank you. Thank you. To be honest, I have quite a bit of time, but I think we can keep this short. Just to briefly address some of the points we heard from our friends, they recognized that the last time that Commerce was faced with a choice between this broader category that covered wood and coconut shell was in AR4. What happened in AR4 was that case went all the way up to this court on appeal. In the following review, Jacoby Carbons put on this new evidence about how its own activated carbon could not be produced using wood-based charcoal. And so that was the point where Commerce went in this direction of, okay, we're going to continuously find that coconut shell is the best available information. It was because Jacoby Carbons had put on that very specific evidence about its own product, its own subject merchandise. Jacoby Carbons obviously was not a respondent in this review, and none of the respondents had evidence. So would I understand correctly that we're assuming that this Commerce order survives, that you still have the ability in, if not the next one, which probably is too far along, but in further proceedings to produce new evidence about why, after all, coconut is not the best comparator or substitute? That's correct, Your Honor. And you'll see as our friends previewed that the following administrative review, which was AR13, the parties did make more of an effort to put on some of that information in their surrogate value submissions. But as Judge Chen recognized, each review is its own discrete segment. Judge Stronto, you asked if prior decisions from the Department go on the record. They don't necessarily. They can be cited by the parties as legal authority, but often all of the memos underlying Commerce's decision don't actually get put on the record automatically. So issues and decision memos are not sort of judicially noticeable, or they are? Oh, of course, judicially noticeable, but not actually part of the administrative record, which is the point. And then one final point. My friend mentioned the case where the Chinese respondents had argued against using a certain category of import data because they included imports from France that had wood-based charcoal. I'd just point out that that case, it actually, the reason wasn't that the respondents did not argue that wood-based charcoal is not comparable. What they argued was that the very specific type of wood-based charcoal that was being imported from France was only suitable as used in animal feed, and it was not comparable or not specific to their input for that reason. So that was just a clarification. So we submit that this case is most similar to AR4, where this court said that where Commerce's prior analyses do not speak to the choice between wood, or similarities between wood and coconut shell, it's not reasonable to rely on those prior analyses to support the choice of just coconut shell. And what material does Carbon Activated use? Coal-based. They use coal. Thank you. Thanks to all counsel. This case is submitted.